```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA      *

    vs.                       *  CIVIL ACTION NO. 13-978
                                    (CRIMINAL NO. MJG-09-0628)
DEMA DAIGA, et al.            *

*     *     *     *     *     *     *     *     *
```

MEMORANDUM AND ORDER

The Court has before it Petitioner's Motion to Vacate or Set Aside Judgment and Sentence [Document 211], Petitioner's Motion to Compel FBI Agent Bradford Lynch to Admit that He Deliberately or Inadvertently Concealed Exculpatory Evidence [Document 223], and the materials submitted relating thereto. The Court finds that a hearing is unnecessary.

I.   BACKGROUND

On June 10, 2010, Petitioner was convicted by a jury on ten Counts [1-3,5-7,9-12] of Wire Fraud [18 U.S.C. § 1343] and two Counts [4 and 8] of Aggravated Identity Theft [18 U.S.C. § 1028A(a)(1) & (c)(5)]. On April 11, 2011, Petitioner was sentenced to 37 months concurrent on each of the ten Wire Fraud Counts, 24 months consecutive on the Aggravated Identity Theft Count 4, and 4 months consecutive on the Aggravated Identity Theft Count 8, for a total of 65 months of imprisonment.

Petitioner, although provided with appointed appellate counsel, elected to proceed on appeal pro se. On June 12, 2012, the United States Court of Appeals for the Fourth Circuit affirmed Petitioner's conviction. United States v. Daiga, 483 F. App'x 797 (4th Cir. 2012), cert denied 133 S. Ct. 957 (2013).

II. DISCUSSION

Petitioner seeks to have his conviction and sentence vacated, contending that:

- There was a variance between the evidence presented at trial and the Indictment;

- His trial counsel had a conflict of interest; and

- He was denied the effective assistance of counsel.

A. Variance

The Indictment set forth allegations that Petitioner was engaged in a scheme with others to submit fraudulent loan applications and appraisals to Landmark Funding LLC ("Landmark"), a mortgage lending company, resulting in loans causing more than half a million dollars in losses to the lender. The Indictment did not expressly state that Daiga agreed to pay, and did pay, a Landmark loan officer (Ms. Perrault) for her assistance in obtaining loan approvals. But, since there was evidence to this effect, Petitioner contends

there was a variance between the Indictment and the trial evidence that violated his constitutional rights.

1. Procedural Issue

The Government contends that Petitioner waived any variance objection by failing to assert it in post-trial motions or on direct appeal and by not showing cause for these failures. See United States v Frady, 456 U.S. 152, 167-68 (1982) ("[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains.").

The Government may well be correct. However, even if there were no valid procedural objection, Petitioner would not be entitled to the relief sought. The Court will, therefore, assume that there has been no waiver and that the appellate court's conclusion that the conviction was supported by substantial evidence does not bar Petitioner's variance claim.[1]

---

[1] Cf. United States v. McDonald, 64 F. App'x 359, 361 (4th Cir. 2003) ("Because this court has decided the fatal variance issues, and any remaining claims related to the indictment are deemed frivolous, it is not debatable whether the claim properly states the denial of a constitutional right. We therefore dismiss this portion of the appeal."); Grene v. United States, 360 F.2d 585, 586 (5th Cir. 1966) ("This Court, however, has already reviewed this case on its merits. We then held that

3

    2.   <u>There Was No Cognizable Variance</u>

As stated in <u>United States v. Gold</u>, 743 F.2d 800, 813 (11th Cir. 1984):

> a variance exists where the evidence at trial proves facts <u>different</u> from those alleged in the indictment, as opposed to facts which, although not specifically mentioned in the indictment, are entirely consistent with its allegations.

The evidence of payments by Petitioner to Ms. Perrault is not inconsistent with the allegations in the Indictment that Daiga devised and executed a scheme and artifice to defraud Landmark.

Petitioner concedes that he was aware of the Government's intention to use the payments to Ms. Perrault to prove the wire fraud allegations and, in fact, contends that he requested his trial attorney subpoena Ms. Perrault to testify at trial. <u>See</u> [Document 211] at 17-18. Moreover, Petitioner himself had told the investigating agents of these payments and was – through discovery – fully aware that the Government had evidence of those payments for use at trial. <u>See</u> [Document 219] at 17. Therefore, there does not appear to be any basis upon which the

---

'there was ample evidence as to each of the appellants to sustain the verdict of the jury and judgments of conviction.' Thus the sufficiency of the proof, or any possibility of fatal variance therein, has already been settled by the usual appellate process." (internal citation omitted)).

4

Government's use of the evidence in question at trial provides a basis for § 2255 relief for Petitioner.

B.  Ineffective Assistance of Counsel

In order to prevail on a claim that counsel's representation violated his Sixth Amendment right to effective assistance of counsel, Petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness,"[2] and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome [of the proceedings]."  Id. at 694.

In this case, Petitioner bases his ineffective assistance of counsel claim on:

   1. An alleged conflict of interest that interfered with the effective representation of Petitioner; and

   2. Trial counsel's failures to:

      a. Subpoena certain "agents" of borrowers as witnesses;

      b. Introduce certain bank records of Petitioner's;

---

[2]  Thus overcoming a presumption that counsel's conduct (i. e. representation of the criminal defendant) was reasonable.  See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).

5

      c.    Adequately cross-examine the Government's appraisal expert and/or otherwise challenge the Government's appraisal determinations;

      d.    Present testimony from Ms. Perrault to refute the bribery allegations; and

      e.    Take various other actions.

1. <u>Alleged Conflict of Interest</u>

Petitioner's conflict of interest claim is based upon the allegation that, <u>prior to the trial</u> in which Petitioner was convicted, Petitioner's trial counsel intended to sue Landmark on behalf of several victims of the scheme at issue. [Document 211] at 11.

There is a factual dispute as to whether trial counsel had this intention or took any action in regard to representation in the civil case until after the trial in the criminal case was concluded. Trial counsel testified at Petitioner's sentencing hearing that, weeks after the trial, he discussed with Petitioner his intention to file suit on behalf of victims and that he did not solicit any of the victims until July 8, 2010, a month after the trial. Petitioner, however, testified that, <u>prior to the trial</u>, he was informed by his trial counsel of his intent to sue Landmark. <u>Id.</u>

The Court finds trial counsel's testimony more reliable than Petitioner's. However, even on Petitioner's version of the facts, Petitioner would not be entitled to relief.

6

Thus, the Court will assume, without finding that, as alleged by Petitioner, trial counsel formed the intention, prior to Petitioner's criminal trial, to solicit victims of the fraudulent scheme to be his clients in a civil suit against Landmark and notified Petitioner of this intent.  When notified of this intent, Petitioner did not object and stated in his Petition, "[trial counsel] never gave me any specifics.  I couldn't imagine that his intentions could adversely affect me." <u>Id.</u>

Petitioner has presented nothing to indicate that trial counsel's alleged pretrial intent to sue Landmark – an intention that Petitioner states was communicated to him prior to trial – was in conflict with Petitioner's interests.  Indeed, a major premise of Petitioner's defense was that Landmark was at fault for making the loans at issue and that Petitioner was unaware of any fraudulent scheme.  In the absence of any plausible theory supporting a contention that there was no fraud at all, the best contention (weak though it was) may have been that Landmark was not a victim but a willing participant in the scheme.

In any event, Petitioner is not entitled to relief based upon his conflict of interest contention.

### 2. "Agents" of Borrowers as Witnesses

Petitioner contends that trial counsel should have subpoenaed and obtained testimony from certain "agents" who supplied information about borrowers that was utilized in the fraudulent scheme. Petitioner further contends that trial counsel should have sought to introduce evidence of emails that demonstrated the loan applications were forwarded by the agents, apparently from the borrowers. Petitioner does not establish that he provided trial counsel with information adequate to enable counsel to locate these agents. Nor does Petitioner establish the exculpatory nature of emails sent by these agents. Finally, Petitioner does not present a plausible version of exculpatory testimony that would be forthcoming from these agents, assuming the agents would have chosen to testify, rather than to assert their Fifth Amendment rights against self-incrimination.

### 3. Bank Records

Petitioner contends that trial counsel should have introduced into evidence certain bank records of Petitioner's that would have established that others profited from the criminal transactions at issue. Petitioner does not present a reason to believe that these records would indicate that he did not himself profit as well. Moreover, at trial the Government

8

conceded that persons other than Petitioner also profited from the transactions at issue and that in some instances Petitioner played a lesser role.

Petitioner does not explain how the bank records in question – assuming they indicated that Petitioner did not profit from the transactions to the extent claimed by the Government - would have exculpated him.

### 4.  Appraisal Testimony

Petitioner contends that trial counsel was ineffective because he did not adequately cross examine the Government's valuation expert witnesses.  Petitioner further contends that trial counsel should have subpoenaed other appraisers to testify at trial and introduced evidence of comparable sales to justify the home values.  Petitioner does not, however, present a plausible basis to believe that such cross-examination or additional evidence would negate the conclusion that most – if not every one – of the valuations used as part of the fraudulent scheme were grossly inflated.  Nor is there any basis for concluding that such evidence – if available - would have presented a plausible possibility, much less a likelihood, that Petitioner would have been acquitted.

5.   <u>Ms. Perrault's Testimony</u>

Petitioner contends that trial counsel should have obtained trail testimony from Ms. Perrault (a Landmark employee), who was an integral part of the fraudulent scheme.  She provided information as to a prospective person whose identity was to be used in the fraudulent scheme; specifically what level of income and assets would need to be presented to create a loan application in that person's name that would be accepted by Landmark.

Ms. Perrault was paid thousands of dollars for providing this information.  Petitioner contends that the payments to Ms. Perrault could not have been bribes or compensation because production of the list of conditions necessary to secure a loan from Landmark is required by law.  Even if the payments to Ms. Perrault were generous gratuities, rather than compensation, the fact would remain that Petitioner obtained from Ms. Perrault information needed to create fraudulent loan applications and used the information to do so.

Petitioner does not present any plausible version of testimony that Ms. Perrault – had she testified rather than asserted her Fifth Amendment privilege - could have given that would have been exculpatory.

6.  Miscellaneous Contentions

In addition to the foregoing contentions, Petitioner presents a plethora of miscellaneous contentions that the Court has carefully considered and finds ineffective.  For example, Petitioner contends that trial counsel failed to effectively challenge (1) introduction of statements Petitioner made during interviews with FBI agents (the "302 summaries") and (2) the Government's attempt to conceal allegedly exculpatory evidence in the possession of an FBI agent.  The Court finds none of these to warrant discussion.

7.  Trial Counsel's Overall Performance

Any attorney in any trial, particularly a trial in which a client is convicted, can be "second-guessed."  Petitioner's trial counsel was not perfect.  However, the Court finds no basis to conclude that any conceivable "improvement" in trial counsel's performance would have presented a plausible chance, much less a reasonable probability, that Petitioner would have been acquitted.

Any attorney representing Petitioner in this case would, like trial counsel, have been confronted with overwhelming evidence of guilt and no plausible defense theory.  There is no reasonable probability that the result would have been any different, regardless of what trial counsel might have done.

8.  <u>Evidentiary Hearing</u>

The Court finds the record more than sufficient to support the instant decision. The Court finds no need for an evidentiary hearing.

C.  <u>Motion to Compel Admission</u>

Petitioner's Motion to Compel FBI Agent Bradford Lynch to Admit that He Deliberately or Inadvertently Concealed Exculpatory Evidence [Document 223] appears to be an informal request for admissions. The Motion can be denied purely on procedural grounds. However, inasmuch as Petitioner presents contentions of misconduct on the part of a federal investigator, the Court will – albeit briefly – address the matter.

The Court, having presided over the trial and, of course, these post-conviction proceedings, finds no basis whatsoever for a contention that the agent engaged in, or participated in, a "fraud on the court" or "criminal" conduct. Nor is Petitioner justified in making such allegations against the Assistant United States Attorney.

The bottom line is that, even if it were procedurally possible to compel the agent to admit an allegation, the Court would not compel the admission sought by Petitioner.

12

III. CONCLUSION

For the foregoing reasons:

1. Petitioner's Motion Vacate, or Set Aside Judgment and Sentence [Document 211] is DENIED.

2. Petitioner's Motion to Compel FBI Agent Bradford Lynch to Admit that He Deliberately or Inadvertently Concealed Exculpatory Evidence [Document 223] is DENIED.

3. This case shall be dismissed with prejudice.

4. Judgment shall be entered by separate Order.


SO ORDERED, on Tuesday, April 29, 2014.


                                                /s/
                                  Marvin J. Garbis
                          United States District Judge